RUTLAND,
*February*,
1836.

EZRA WILKINS *vs.* JOEL STEVENS.

On a contract for the delivery of manufactured articles of a given description at a given time and place, if the *quantity* specified in the contract and of the same description, although not of the same quality, be delivered at the time and place, and the defendant proceed to use part of the goods and to pay part of the price, without objection until after a question arises as to payment, he will be considered as having accepted the articles and waived all claim for damages, or a reduction of the price stipulated, on account of any open and apparent defects therein.

In such case, if the articles be of a kind usually charged on book, although the contract were *in writing*, and payment to be made in specific articles, yet if the term of credit has expired, a recovery may be had in the action of book account, provided the contract is expressed in dollars.

In such case, the stipulation being considered as introduced for the use of defendant, if not performed, it is the same here, although not at common law, as if the contact had been originally payable in money, and general indebitatus assumpsit or book account will lie in this state. But if the contract be so far special, that the object of the action is to recover for *breach* of defendant's *promise*, rather than the value of plaintiff's part of the performance of the contract, this action will not lie.

This was an action of book account, in which plaintiff claimed to recover for certain cart and wagon hubs, sold and delivered to defendant. The auditor reported for the plaintiff, and stated the following facts as the basis of his report. The contract between the parties was as follows.

Rutland, Feb. 26, 1833.

"Then agreed Joel Stevens with Ezra Wilkins for 100 set of hubs, to be delivered at Rutland East village, on or before the first of June next, for which the said Joel agrees to pay the said Ezra according to the prices hereinafter named.

| | | | | |
|---|---|---|---|---|
| For one horse hubs, | 50 cts. | per set. | | |
| Cart hubs, | 50 cts. | do. | | |
| 2 horse bubs, | 70 cts. | do. | | |
| Sulkey hubs, | 25 cts. | do. | | |
| 10 set of cart hubs, | | | $5 | 00 |
| 20 do. 2 horse do. | | | 14 | 00 |
| 10 Sulkey do. | | | 2 | 50 |
| 60 1 horse do. | | | 30 | 00 |
| | | | $51 | 50 |

The said Joel agrees to pay the said Ezra for the above described bill of hubs, when delivered to Rutland, on demand, seventeen dollars and fifty cents in money,                    $17 50
One pair of thin boots, two pair thick boots, 2 pair thick shoes,                    15 00

| | | | |
|---|---|---|---|
| Fourteen dollars in fulled cloth at our common charging prices, | | 14 00 | |
| Five dollars in cotton sheeting, do. do. do. | | 5 00 | |
| | | $51 50 | |

RUTLAND,
*February,*
1836.

Wilkins
*vs.*
Stevens.

The above mentioned bill of hubs the said Ezra agrees and binds himself to make of good sound timber and turned in a workman-like manner, or pay all damage, &c. Signed by both parties, and by plaintiff endorsed, "paid except the boots and shoes."

It was further reported that the plaintiff made and delivered the number and description of articles specified above, at the time and place, the defendant not being present. The defendant continued to use them without objection, and paid all except the boots and shoes, saying at one time that the "one horse wagon hubs were too small," but at the same time paying $36 50, and saying he should pay the balance in a few days. Accordingly defendant sent boots and shoes of an inferior quality, but of the general description specified in the contract to plaintiff, which he refused to accept, and afterwards defendant put them to his own use, saying the hubs were not according to the contract, there then remaining at the place of delivery, thirty one set of hubs for one horse wagons. The auditor reports that these hubs were too small and irregular. Exceptions being filed to the report, the county court accepted it and gave judgment for plaintiff, to which defendant excepted, and the case comes here for revision.

*G. W. Harman for defendant.*—I. The action of book account will not lie in this case, because the articles embraced in the plaintiff's accounts, were made, and so far as there was a delivery, delivered, in pursuance of the written contract, making a part of the auditor's report.

1. Book account lies in general for such articles of personal estate sold and delivered for the use of such personal things let and hired, and for such services done by one for another, as are ordinarily charged on book.—2 Sw. Sys. 167—1 Aik. Rep. 101 —3 Vt. Rep. 246, ib. 469—5 Vt. Rep. 363.

2. It lies for "labor done by the month, at a fixed price, and payable at a future day, if payment is not made as agreed."—3 Vt. Rep. 246—5 Vt. Rep. 363, *Leach vs. Shepherd.*

3. Book account does not lie to recover damages arising from the breach of a contract, nor when there has been a tort commit-

RUTLAND,
February,
1836.

Wilkins
vs.
Stevens.

ted.—2 Sw. Sys. 168—1 Aik. Rep. 101—2 Aik. Rep. 383-9
3 Vt. Rep. 246.

4. It does not lie where there has been a special contract in writing, under which the articles were delivered.—Bray. Rep. 39, *Whelpley* vs. *Higley*—1 Con. R. 75—2 Root Rep. 130, *Johnson* vs. *Gunn.*

5. But a special agreement, as to the *mode of payment,* never precluded this action.—2 Aik. Rep. 389, *Fay* vs. *Green*—2 Vt. Rep. 65, *Boardman* vs. *Keeler*—ib. 366, *Newton* vs. *Higgins*—ib. 455, *Skinner* vs. *Conant.*

6. Book account will not lie in the present case, because the party should not be permitted to swear to the performance of his contract, for if he may, then indeed, "few cases will remain, to which the salutary rule of law, that a party cannot be a witness for himself, will apply.—1 Aik. R. 145, *Read* vs. *Barlow*—1 Vt. R. 97, same case.

II. There was no actual delivery in this case.

1. The right to charge must exist at the time of delivery, and must arise in consequence of such delivery, and cannot depend on the happening of subsequent events.—1 Day's cases, 106—1 Aik. Rep. 73, *Hapon* vs. *Davis*—id. 148, *Read* vs. *Barlow*—1 Vt. R. 97, same case—3 Vt. R. 469, *May* vs. *Brownell.*

2. There must be an actual and not a constructive delivery, to authorize this action.—Sw. Ev. 83—1 Aik, 145, and 1 Vt. R. 97, *Read* vs. *Barlow.*

III. The contract was not fulfilled. The report finds, that some of the hubs were too small and otherwise defective : and the plaintiff having failed to perform on his part, cannot recover of the defendant.

*S. Foot for plaintiff.*—1. The action of book account is the proper action in this case. It has long been settled by an uniform course of decisions in Connecticut and in this state, that this action is the proper remedy for any articles of personal property, sold and delivered, personal services, &c. which, in the ordinary intercourse of men, are charged on book. There can be no question, but the articles charged in this case, were the proper subjects of book account. They were also delivered at the time and place agreed upon by the parties. Their having been deliverd in pursuance of a special agreement, cannot deprive the plaintiff of his remedy in this form of action. The application of such a rule would have the effect to entirely abolish this action ; for there can be no sale, and consequently no right to charge an article on book, unless

there be some agreement, some contract respecting it, between the parties; and it matters not whether this contract be express or implied, verbal or written. Whatever the contract may be, as to the price, mode or time of payment, it is competent for the parties to testify in relation to it, and if the contract be in writing, that may be given in evidence.—See 1 Swift, 582—2 Aik. 81, *Stevens et al.* vs. *Richards et al.*—Do. 386, *Fay et al.* vs. *Green*—2 Vt. R. 366, *Newton* vs. *Higgins*—3 Vt. R. 246, *Fry* vs. *Slyfield*—5 Vt. R. 363, *Leach et al.* vs. *Shepard*—Do. 451, *Whiting* vs. *Corwin*—6 Vt. R. 340, *Blish et al.* vs. *Granger*.

2. The auditor has found that the hubs were delivered at the time and place agreed upon, that some three weeks afterwards the defendant sent for and took home a load of the hubs, and that after this the plaintiff called on him for his pay, and received it in full, except the boots and shoes, which the defendant then promised to send soon. He had thus accepted the hubs, in fulfilment of the contract on the part of plaintiff, and it was too late then for the defendant to refuse payment, on the ground of non-acceptance, for the insufficiency of the hubs.—*Billings* vs. *Needham*, in this court, February term, 1834, (not reported).—6 Vt. Rep. 340, *Blish et al.* vs. *Granger*, and the cases there cited.

The opinion of the court was delivered by

REDFIELD, J.—If there be any one subject of more just regret than all others, in relation to the action of book account, it is the protracted litigation about pitiful, small sums, which is constantly growing out of the action. We would be glad so far to define the limits of the action, as to obviate the necessity of so much discussion of that topic. But among such endless variety of cases, as are constantly presenting themselves before us, confusion rather than activity is to be feared.

The present case, in principle, is almost identical with that of *Blish and Richmond* vs. *Granger*, 6 Vt. R. 340. But it is not the same case, and the defendant insists, cannot be brought within the known limits of the action of book account. Formerly great diversity of opinion among the profession, and not a little upon the bench, prevailed in relation to the policy of restricting or extending the boundaries of this action. And the mode of trial, which obtains by statute in that action, is so different from proceedings in trials at common law, that there is very just grounds for such contrariety of opinion. Some, indeed, of eminent attainments in judicial science and learning, prefer extending the same mode of trial

RUTLAND,
*February.*
1836.

Wilkins
*vs.*
Stevens.

RUTLAND,
*February,*
1836.

Wilkins
*vs.*
Stevens.

to all action ; while others, of no less pretensions, would wish to abolish the action entirely.   As in other cases, *in medio tutissime ibis.*

It is first objected, here has been no *delivery* of the thirty-one set of hubs, still remaining at the place specified in the contract ; but that, at most, it cannot amount to more than a tender and refusal.   If the property had only been tendered at the time and place, and not accepted, this action wloud not lie—*Reed* vs. *Barlow*, 1 Aik. 145.

But the defendánt, having here proceeded to use most of the hubs without objection, and having paid and offered to pay the full price, must be considered as having accepted the hubs, and waived all objection on account of any *apparent* defect therein. What remedy he might have for *secret* or *latent* defects, known or not known to the plaintiff, but unknown to defendant, it is not necessary to determine.   But an acquiescence, of the character shown in this case, should preclude him from now refusing the hubs, or claiming damages or a reduction in price, on account of the size or shape of the hubs, which must have been known to defendant from the first.   This is in accordance with well established principles of common law, both in relation to *labor* and *goods.*—2 Starkie Ev. 640, 641, 642, 643, 644—*Everett* vs. *Gray*, 1 Mass. R. 101—*Fisher* vs. *Sumada*, 1 Camp. 190— *Grimaldi* vs. *White*, 4 Esp. cases Nisi Prius, 95.

It is further objected, that the contract in this case precludes the right to charge the articles on book.   But the contract being in writing clearly makes no difference in the remedy, whether at common law or in this form of action.   The law attaches no higher importance to a contract in writing, in relation to the extent or the character of the obligation which it imposes, than it does to a contract resting in *mere words* not reduced to writing.   A written contract may be superseded, released or rescinded, by a subsequent verbal contract, upon good consideration.   The maxim of *eo ligamine quo ligatus*, which the law applies to contracts under seal, does not apply to merely written contracts.   The question whether the party may bring this action, depends upon other considerations than the mode of authenticating the contract.

1.   Did the plaintiff look to the written contract for his remedy ? Clearly not.   For the written contract would show no cause of action.   That depended upon the delivery, which must rest in parol exclusively, and be proved by testimony, without the writ-

RUTLAND,
*February,*
1836.

Wilkins
*vs.*
Stevens.

ing. And this point is the very hinge upon which the right to recover rests.

2. The written contract contained nothing more than the law will imply except as to the *amount* and *time* and *mode* of payment; and it has always been held that any special agreement as to these *mere incidents* of the contract, will not preclude plaintiff's right to charge the articles sold or labor performed on book, and recover in this form of action.—*Newton* vs. *Higgins*, 2 Vt. R. 366—*Fry* vs. *Slyfield*, 3 Vt. Rep. 246—*Whiting* vs. *Corwin*, 5 Vt. 451—*Blish et al.* vs. *Granger*, ubi supra.—

3. It is urged that this is virtually a claim for damages for the breach of a special contract. If so, the action cannot be sustained, But we consider that after the term of credit has expired and the obligation to pay in money become absolute, it is the same as if the contract had never contained any stipulation for payment in specific or collateral articles. And in all those states where tobacco, as in Maryland, or grain or manufactured articles, as in many of the New England states, form a *quasi currency*, this doctrine has always obtained. Hence in this state it was very early decided, that goods sold and delivered, or labor done and performed, to be paid in specific articles, might, after the term of credit had elapsed, be recovered *under the general count*, which could not be done at common law. There, unless the payment was to be made *in money*, the declaration must be special, and damages were given for the *non delivery* of the specific or collateral articles.— 1 Saunder's R. 269 and notes—1 Chitty Pleadings, 337—15 Petersdorf, 435 and notes—*Talver* vs. *West*, *Holt* N. P. C. 178—2 Petersd. 421.

But with us, any such stipulation, when the contract is as in the present case, expressed in dollars, has been considered as introduced for the ease of the debtor, and unless performed, to be the same as if it had not been so expressed and the contract stood for so many dollars in the legal currency.

Hence in every case, when in the action on book, the parties claim to recover for goods sold and delivered, or labor, &c. if they are the ordinary subjects of book charge and might have been recovered under the general *indebitatus* counts in asssumpsit, they will be permitted to recover.

In whatever form of action the plaintiff, in this case, proceeds, he must either recover the $15 or the value of the hubs, deducting payments made, and could never go for the value of the boots and shoes. It was at the election of defendant whether to pay in

RUTLAND,
*February,*
1836.
Wilkins
*vs.*
Stevens.

that manner or not. If he omitted so to pay, he could not be permitted to reduce the sum, named in the contract, in dollars, by showing the specific articles were of less value, nor could plaintiff be permitted to show they were of greater value.

But whenever the contract is so expressed, that the party must go, not for a fixed price named in currency, not for the value of his alternative of the obligation, but *for the value of defendant's promise*, then neither this action nor general indebitatus assumpsit will lie. In this case there is no error.

Judgment is affirmed.